209 So.2d 477 (1968)
Ronald Earl SHAW, Appellant,
v.
STATE of Florida, Appellee.
No. I-329.
District Court of Appeal of Florida. First District.
April 18, 1968.
Rehearing Denied May 17, 1968.
As Revised June 13, 1968.
*478 Richard W. Ervin, III, Public Defender; John D. Buchanan, Jr., Asst. Public Defender, for appellant.
Earl Faircloth, Atty. Gen., George R. Georgieff, Asst. Atty. Gen., for appellee.
SPECTOR, Judge.
This is an appeal from a judgment of conviction on a charge of larceny of an automobile.
While appellant was an inmate at Apalachee Correctional Institute, he escaped from a work crew to which he was assigned at the Florida State Hospital at Chattahoochee, Florida. The automobile that he was found guilty of stealing was parked at the hospital by an employee on the day of the theft.
The evidence on which the State relied at trial to show appellant's guilt was his exclusive possession of the car on the same day it was stolen. He was observed in control and possession of the car by Mr. John Howell, the owner of a country store and filling station on the highway to Bainbridge, Georgia, where he had stopped to ask for directions. Mr. Howell's suspicions were aroused by appellant's appearance, and he called the sheriff's office in Bainbridge setting off a chain of events leading to appellant's apprehension.
Upon receiving a description of the vehicle involved, Deputy Sheriff Phillips of Bainbridge, Georgia, proceeded south toward where the vehicle was seen in possession of appellant and passed it heading north toward Bainbridge. Phillips immediately turned his car around in the middle of the road to give chase and at that time the car fitting the description was stopped on the side of the road and the driver, leaving the motor running, abandoned it and headed for the woods. The track dogs were called in and gave chase to where the appellant was apprehended several hours later. While the Georgia Deputy was unable to identify the appellant as the driver of the stolen vehicle, that was accomplished at the trial by the evidence given by Mr. Howell, the service station owner. Moreover, the evidence reflects that the tracks leading from the car which were followed by the dogs were readily identifiable as the tracks made by shoes regularly issued to inmates at Apalachee Correctional Institute.
On appeal, the sole point relied upon by appellant for reversal is that the giving of an instruction on the unexplained possession of recently stolen property amounted to a comment by the court on the appellant's failure to testify. The text of the questioned instruction is as follows:
"Gentlemen, it is also proper for you to consider the unexplained possession of recently stolen property, if there should be such evidence of that. The unexplained possession of recently stolen property may raise an inference that the one having possession was the one who stole the property."
*479 In Romanello v. State, 160 So.2d 529 (Fla.App. 1st 1964), cert. denied, 381 U.S. 915, 85 S.Ct. 1541, 14 L.Ed.2d 436, this court held that an instruction similar to the one here questioned does not amount to a comment on defendant's failure to take the stand.
In McClain v. State, 185 So.2d 707 (Fla. App.2d 1966), cert. denied, Fla., 192 So.2d 498, the court, considering the propriety of a similar instruction in light of the Fifth Amendment to the United States Constitution and Section 12, Declaration of Rights of the Florida Constitution, F.S.A., held at page 708 of 185 So.2d:
"This proscription [constitutional provisions aforesaid] prohibits a person in a criminal case from being compelled to be a witness against himself. It does not go so far as to prohibit a jury from considering as circumstantial evidence the possession of stolen property, for which possession the defendant at a time prior to trial, had offered no explanation."
Quoting with approval from this court's opinion in Romanello v. State, supra, the McClain opinion continued at page 708:
"`* * * The "explanation" of possession thus referred to is that given by the accused when he is first under duty to speak after such recently stolen property is discovered in his possession. There is no burden upon the defendant to take the stand and explain such possession at the trial * * *.'"
We have examined the cases relied on by appellant and find them to be clearly distinguishable from the case at hand as well as the cases we have cited above in this opinoin. It has long been the law that a showing by the evidence that the defendant had in his possession property that had recently been stolen was a proper circumstance to be taken into account by the jury, together with all the other evidence and circumstances, in determining the fact that defendant did the stealing. Such a showing does not as a matter of law stand as proof of defendant's guilt. It only forms the basis of an inference which may, but need not be drawn by the jury. In effect, such possession, when shown to have occurred recently or shortly after the theft, permits an evidentiary inference that the possessor committed the theft. The inference, if found by the jury, is a logical one and we are not inclined to say that what was logical yesterday is not so today. Nor do we think that the instruction should be given without reference to the defendant's opportunity to explain his possession at the time he is first found with the stolen property. To do so would deprive the defendant of the right to have the jury consider all of the circumstances surrounding his possession at the time he initially obtained possession of the property.
Recently, our sister court in Young v. State, 203 So.2d 650 (Fla.App.4th 1967), reversed a conviction on a charge of breaking and entering with the intent to commit a felony on a holding that the giving of an instruction similar to the one here complained of was violative of the self-incrimination provisions of the State and Federal Constitutions as construed by the United States Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The basis for the holding in Young, supra, was that after Young was taken into custody he specifically stated to the arresting officer that he did not wish to answer any further questions, as he had a right to do, not only under the Miranda decision, but right on before that. The court then reasoned that Young's "failure to explain possession of stolen goods could not thereafter create an inference of guilt at his trial;" and, therefore, the fact that the defendant had remained silent was used against him by the form of the instruction used as to "unexplained possession."
It is our view that the principle of law pronounced by the Supreme Court of the United States in Miranda, supra, has no application to the principle of law upon which the objectionable jury instruction in *480 this case is predicated. The proposition that the unexplained possession by a defendant of recently stolen property creates an inference of guilt comes into play at the time the defendant is apprehended and the duty thereupon immediately arises for him to explain the nature and circumstances of his possession. Romanello v. State and McClain v. State, supra. Although admittedly the person taken into custody has no legal obligation to make any explanation unless he elects to do so, this does not affect in any manner the inference of guilt which arises from his failure to make a reasonable and plausible explanation as to how the property came into his possession. The rule in Miranda becomes applicable during the later stages of police restraint exercised over the defendant when he is subjected to custodial interrogation. As said by the Supreme Court in Miranda:
"* * * In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."
The court in Miranda defined its expression "custodial interrogation" as follows:
"By custodial interrogation, we mean questioning initated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."
In the case sub judice, the record reveals that when defendant was apprehended, and before any police custodial interrogation commenced, defendant had ample opportunity of explaining his possession of the stolen automobile which he was driving shortly prior to his apprehension, but he failed to do so. Such failure created the inference that he had stolen the vehicle in accordance with the principles of law upon which the court's instruction to the jury is based. We hold that the instruction was proper and its correctness unaffected by the rule in Miranda.
Affirmed.
WIGGINTON, C.J., and RAWLS, J., concur.